IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FREDERICK SHAFFER HIGGINBOTHAM, *
III, D.D.S., et ux.
                                *
        Plaintiffs
                                *
    vs.                            CIVIL ACTION NO. MJG-00-2764
                                *
KCS INTERNATIONAL, INC.
t/a CRUISERS YACHTS, et al.     *

        Defendants               *

*       *       *       *       *       *       *       *       *

## SUPPLEMENTAL MEMORANDUM AND ORDER

The Court has before it Defendant Windline Inc's Motion for Summary Judgment[1] and the materials submitted by the parties relating thereto. The Court has held an evidentiary hearing and has had the benefit of the testimony of Mr. Kenneth Court and Dr. Clyde Richard, as well as the arguments of counsel.

I.   BACKGROUND

    A.   Factual Background

The instant case arises out of injuries Plaintiff Frederick Shaffer Higginbotham ("Dr. Higginbotham") sustained in May of 1999 while attempting to extend the swim platform ladder on a yacht. The ladder at issue is a three-rung white aluminum

---

    [1]   In particular, the issues deferred in the Memorandum and Order issued February 19, 2002.



telescoping ladder used to board the vessel from the water. Dr. Higginbotham alleges that he attempted to extend the ladder, but it was "stuck or [it] hesitated" before coming loose. Higginbotham Dep. p. 119. Dr. Higginbotham pulled hard on the ladder and when the ladder freed itself, Dr. Higginbotham was propelled backwards hitting his head, shoulder and back on the transom and his hip on the swim platform of the yacht. In addition, Dr. Higginbotham's hand was lacerated by the metal ring attached to the ladder.

B. Procedural Background

Plaintiffs filed the instant suit on September 15, 2000 against the manufacturer of the yacht, KCS International Inc. ("KCS"), the seller of the yacht, Warehouse Creek Yacht Sales, Inc. ("Warehouse") and the manufacturer of the ladder, Windline Inc. ("Windline") alleging causes of action for breach of express and implied warranties, negligence, strict liability and loss of consortium. On November 15, 2001, Warehouse and Windline filed separate Motions for Summary Judgment. The Court held a hearing on the Motions on February 6, 2002. By Order of February 19, 2002, the Court granted Warehouse Creek's Motion for Summary Judgment and granted in part Windline's Motion for Summary Judgment, reserving its ruling on the remainder of the Motion

until after a hearing to determine the admissibility and adequacy of Plaintiffs' proffered expert opinions under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 588 (1993).  In accordance with the February 19, 2002 Order, the Court held a <u>Daubert</u> hearing, and had the benefit of the testimony of Plaintiffs' proffered expert Mr. Kenneth Court ("Mr. Court") and Defendants' proffered expert Dr. Clyde Richard ("Dr. Richard").

In effect, the pending motion combines a motion in limine seeking a declaration of inadmissibility with a substantive motion for summary judgment.  By the motion in limine, Windline wishes the Court to rule that opinion evidence of Plaintiffs' proffered expert, Mr. Court, is inadmissible to establish a defective ladder.  Should the Court rule that the evidence of Mr. Court proffered by the Plaintiffs is inadmissible, the Plaintiffs would have presented insufficient evidence to establish liability, and summary judgment for Windline would be appropriate.

At this time, the Court will resolve the embedded motion in limine and, as discussed below, determine that Plaintiffs have not presented admissible evidence permitting a finding that the ladder was defective.

II.  **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As stated recently in Cooper v. Smith & Nephew, Inc.:

> Under Federal Rule of Evidence 702, trial judges act as gatekeepers to "ensure that any and all scientific testimony ... is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993). While Rule 702 was intended to liberalize the introduction of relevant expert evidence, courts "must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (quoting Daubert, 509 U.S. at 595). Therefore, a trial judge, faced with a proffer of expert scientific testimony, must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93.  The proponent of the testimony must establish its admissibility by a preponderance of proof.  See id. at 592 n. 10.

259 F.3d 194, 199 (4th Cir. 2001).

In Daubert, the Supreme Court identified pertinent factors to consider in determining the reliability of proffered expert

testimony. These include (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and, (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. See Daubert, 509 U.S. at 592-94. The district court has a "gatekeeping" function in regard to all expert testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). The Supreme Court has made it clear that this Court must "make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152.

III. DISCUSSION

Plaintiffs have presented evidence adequate to support a finding that:

- Sometime prior to May 30, 1999 when Dr. Higginbotham used the ladder at issue, the ladder was bent by some force.

- The bend in the ladder was a proximate cause of the accident and, thus, of injuries to Dr. Higginbotham.

The question before the Court is whether Plaintiffs have produced evidence adequate to establish that a defect in the ladder was a proximate cause of the bend.

A.  <u>Proof That The Bend was Caused by Normal Ladder Use</u>

Plaintiffs seek to rely upon the proffered expert witness testimony of Mr. Kenneth C. Court, a mechanical engineer with knowledge of ladders in a marine context.

The Court finds that Mr. Court's opinions are not admissible evidence in the instant case.  Moreover, even if admitted, the said opinions would not amount to evidence adequate to establish the existence of a defect in the ladder or a causative relationship between any defect and the bend at issue.

Mr. Court began his "analysis" by accepting as the ultimate conclusion that the bend had been caused by Dr. Higginbotham's normal use of the ladder on the last occasion of its use prior to the accident.  He sought to find a theory upon which it was possible that Dr. Higginbotham's normal use <u>could</u> <u>have</u> been a cause of the bend.  After theorizing that it was possible that the bend was caused by Dr. Higginbotham's normal use, Mr. Court presumably concludes that the bend must have been (or, perhaps, more likely than not was) caused by the normal use.

As made clear from the testimony of Mr. Court and Defendant's expert witness, Dr. Clyde Richard, there is considerable agreement as to the application of the pertinent engineering principles. Mr. Court agrees with Dr. Richard that the static forces applied to the ladder from normal use by Dr. Higginbotham (assumed to be a 200 pound individual) would result in an applied force of less than half of that needed to cause this bend. Mr. Court, without any valid basis, simply jumps to the conclusion that the dynamic component of the force must have been sufficient to cause the bend. Mr. Court presents no measurements, computations or other valid basis for his conclusion. He merely relies upon his "logical" reasoning that because there was a bend in the metal, whatever dynamic force was necessary must have been contributed by Dr. Higginbotham's ordinary ladder use.

In the context of the instant case, it is undisputed that the ladder could have been bent as a result of force from contact between the extended ladder and an object such as a pier, another boat, etc. Such contact could occur without the knowledge of Dr. Higginbotham. Of course, it is not the Defendant's burden to prove that this (or some other) "innocent" force caused the bend. Rather, it is the burden of Plaintiffs to present evidence from which a jury could find that, more likely than not, the bend was

caused by Dr. Higginbotham's normal ladder use. Plaintiffs have failed to present evidence adequate to carry this burden.

### B. Proof of Defective Ladder

Even if Plaintiffs were able to prove that the bend in the ladder was caused by Dr. Higginbotham's normal use, they would not be able to prove an actionable defect in the ladder.

There is no evidence establishing that any applicable design standards were violated. The American Boat and Yacht Council ("ABYC") standards which apply to ladders were met, as there is no evidence that the ladder at issue could not bear a 400 pound static load. ABYC H-41.8.3.

Plaintiffs argue that the ABYC standard for handholds should be held applicable. The argument is completely without merit. First, the object at issue is a ladder and not a handhold.[2] Second, Plaintiffs have not presented evidence adequate to establish that the ladder at issue failed to meet the ABYC handhold standard.

Mr. Court's view that, in his opinion, the ladder was defective in design is manifestly inadmissible. An admissible opinion as to a design defect requires more than an ability to

---

[2] "Handhold devices . . . assist personnel in the use of . . . ladders . . ." ABYC H-41.5.2.

hypothecate a design that would have avoided the accident at issue. As stated by the United States Court of Appeals for the First Circuit:

> [An] opinion on whether or not there is a design defect] call[s] in essence, for meaningful cost-benefit analysis. This required, in turn, considerable familiarity with the device [at issue] with [device] design, manufacture and marketing; with applicable industry standards, and so on.

Tokio Marine & Fire Ins. Co., Ltd. v. Grove Manufacturing Co., 958 F.2d 1169, 1174 (1st Cir. 1992).

Mr. Court's proffered design defect opinion is based upon his conclusion that a stronger ladder could have been built using steel rather than aluminum. By no means does this come close to admissible evidence establishing that the designer's choice of aluminum rather than steel was negligent. Indeed, as noted above the ladder at issue has not been shown to have failed to meet any pertinent industry standard.

Finally, Mr. Court suggests, with no support whatsoever, that if his design defect position is rejected, there must have been a defect in the metal used to make the ladder. Mr. Court is not a metallurgist and he conducted no strength testing whatsoever on the ladder at issue even though it was readily available to him. Moreover, there is not the slightest reason to suspect a metallurgical defect in view of the extensive use of

the ladder without incident prior to Dr. Higginbotham's acquisition of the boat.

### C. Summary Judgment

As set forth above, the Court holds the proffered testimony of Mr. Court to be inadmissible. In the absence of such testimony, as discussed in the Memorandum and Order of February 19, 2002, Plaintiffs cannot establish their claim in the remaining Counts. Accordingly, this Court shall grant summary judgment to Defendant Windline, Inc.

## V. CONCLUSION

For the foregoing reasons:

1. Defendant Windline Inc.'s Motion for Summary Judgment IS GRANTED.

2. Counts 1, 4, 7, 10 and 13 of the Complaint remain pending against Defendant KCS International, Inc.

3. The currently set trial schedule is RESCINDED.

4.  Defendant KCS International, Inc. may, by April 8, 2002, file a supplemental Motion for Summary Judgment in light of the instant decision.

SO ORDERED this _20th_ day of March, 2002.

_/s/ Marvin J. Garbis_
Marvin J. Garbis
United States District Judge

21